**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

_____

| | | |
|---|---|---|
| JAMES A. GRYS, JR., and | ) | |
| PE1 ENTERPRISES, INC. d/b/a | ) | |
| THE BODY SHOP, and/or BODY SHOP | ) | **Civil Action No. _____** |
| GENTLEMAN'S CLUB, | ) | |
| | ) | |
| Plaintiffs, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BUFFALO, | ) | |
| BUFFALO DEPARTMENT OF PERMIT | ) | |
| INSPECTION SERVICES, BUFFALO | ) | |
| POLICE DEPARTMENT, PATRICK SOLE, | ) | |
| in his official capacity, and, KIMBERLY BEATY | ) | |
| in her official capacity, | ) | |
| Defendants. | ) | |

_____

**PLAINTIFFS' COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF,**
**DAMAGES, ATTORNEYS' FEES, AND COSTS**

## INTRODUCTION

1.      This is a civil action wherein Plaintiffs pray for a declaratory judgment and both a preliminary and permanent injunction to restrain and enjoin the named Defendants, as well as their agents, employees, and representatives, from acting under color of state law to deprive Plaintiffs of their rights, privileges, and immunities secured to them by the United States Constitution. Specifically, Plaintiffs seek to have this Court declare as unconstitutional, both on their face and as applied, and to enjoin, certain provisions of the City of Buffalo Code ("Code") pertaining to the location and regulation of certain "adult" businesses, as described more particularly below.  In short, the Defendants collectively targeted Plaintiffs' proposed First Amendment protected business by taking actions specifically designed to preclude Plaintiffs from opening and operating their desired establishment.  In their rush to censor Plaintiffs and to mute their speech, Defendants have unconstitutionally prevented Plaintiffs' ability to operate its establishment in the City of Buffalo.  Plaintiffs herein seek damages, as well as declaratory and injunctive relief, and costs and attorneys' fees pursuant to U.S.C. § 1988.

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented by virtue of 28 U.S.C. §1331, 28 U.S.C. §1343(4), and 28 U.S.C. §1343(3), the latter of which specifies that the district courts shall have original jurisdiction over any civil action authorized by law to be commenced by any person:

> To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States. . . .

3.      The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. §1367(a) because:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all the other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.     The statutory law which further authorizes the filing of this action is 42 U.S.C.

§1983, which states that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, or any state or territory subjects or causes to be subjected, any citizen of the United states or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

5.     The prayer for declaratory relief is founded on Rule 57 of the Federal Rules of Civil

Procedure as well as 28 U.S.C. §2201, the latter of which provides that:

> . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . .

6.     The jurisdiction of the Court to grant injunctive relief is conferred upon this Court

by Rule 65 of the Federal Rules of Civil Procedure, and by 28 U.S.C. §2202, the latter of which

provides:

> Further necessary or proper relief on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

7.     Further authority for the granting of the injunctive relief requested is conferred

upon this Court by Rule 65 of the Federal Rules of Civil Procedure.

8.     Authorization for the request of attorneys' fees and costs is conferred by 42 U.S.C.

§ 1988.

9.      To the best of Plaintiffs' knowledge and belief, no other action, civil or criminal, is pending in any state court involving the Plaintiffs regarding the activities and events at issue here.

10.     This suit is authorized by law to redress deprivations under color of state law of rights, privileges, and immunities secured by the First and Fourteenth Amendments to the United States Constitution, and for declaratory and injunctive relief.

11.     Venue in this Court is appropriate under 28 U.S.C. § 1391(b) and (c), as the various acts complained of occurred, and Defendants are located, within the Western District of New York.

## PARTIES

12.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

13.     Plaintiff James A. Grys, Jr. ("Grys") is an adult resident of Erie County, New York. Grys owns and operates an adult entertainment venue in Lackawana, New York, and previously operated such a facility in Fredonia, New York.  Upon information and belief, neither of these venues blighted the surrounding neighborhoods.

14.     Plaintiff PE1 Enterprises, Inc. ("PE1") d/b/a The Body Shop and/or Body Shop Gentleman's Club (collectively, "The Body Shop") is a corporation organized under the laws of New York, with its principal place of business in Lackawanna, New York.  Grys serves as PE1's president.

15.     Upon information and belief, Defendant City of Buffalo ("Buffalo" or the "City") is a municipal government located within, and duly chartered under, the laws of the State of New York.

16.     Upon information and belief, Defendant Buffalo Department Permit & Inspection Services ("DPI"), is the administrative agency duly established by the City as the responsible agency for determining the issuance of business operational licenses pursuant to the Code.

17.     Upon information and belief, Defendant Buffalo Police Department ("BPD" or "Police Department"), is a municipal government agency located within, and duly chartered under, the law of the State of New York.

18.     Upon information and belief, Defendant Patrick Sole ("Sole") is the DPI's Director[1] and is the City official responsible for enforcement of the City's licensing regulations, including the issuance or denial of a license to operate.  He is sued in his official capacity therein.

19.     Defendant Kimberly Beaty ("Beaty") is the BPD's Deputy Police Commissioner, and is one of the City officials responsible for recommending the issuance or denial of operational licenses in the City.  She is sued in her official capacity.

20.     Plaintiffs have leased real property at 1285 William Street, Buffalo, New York 14206 ("1285 William St." or the "Premises") where they intend to open and operate a liquor-licensed food and beverage serving venue (to be known, and referred to herein as "The Body Shop") that presents semi-nude female performance dance entertainment to consenting adult patrons; all of which constitutes presumptively protected speech and/or expression under the First and Fourteenth Amendments to the United States Constitution and the corollary protections of the New York Constitution.

21.     Upon information and belief, the Body Shop is located in an M2, General Industrial, district.

---

[1]     The Code uses the titles "Director" and "Commissioner" interchangeably when referring to the highest officer of the DPI.  Plaintiffs will use those terms as quoted in the Code; but otherwise will refer to this position as the "Director" of the DPI.

22.     Upon information and belief, The Body Shop is classified as an "Exotic Cabaret" pursuant to Section 511-4(D) of the Code.

## THE CITY CODE

23.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

24.     Under the Code, an "exotic cabaret" is any establishment that "features . . . topless dancers, go-go dancers, exotic dancers, [or] strippers . . . where the sale of beer, wine or intoxicating liquor for consumption on the premises may or may not be permitted." Buff. Code § 511-5(D).  As an "exotic cabaret," The Body Shop is apparently subject to regulation under a variety of provisions in the Code.

**A.     Adult Regulations**

25.     First, such businesses are subject to the "Adult [U]ses" Zoning Regulations ("Adult Regulations") because "exotic cabarets" are specified as "adult use" businesses.  Buff. Code § 511-95(A).  Exotic cabarets are prohibited from operating in any zone "other than a CM- or M-zoned district, [but not] within 750 feet of another adult use or within 750 feet of any R-zoned district."[2] Buff. Code § 511-95(A)(1).  "All adult use establishments are required to be licensed pursuant to Chapter 263."[3]  Buff. Code § 511-95(A)(1)(a).  Moreover, such businesses are required to procure an "Adult use permit" as follows:

> No person, firm or corporation shall continue or engage in the business of operating . . . exotic cabarets . . . without an adult use permit and current license issued by the Director of Inspections, Licenses and Permits . . . .  The Director of Inspections, Licenses and Permits shall issue his determination to approve or deny the

---

[2]     A "CM-zoned" district is a "Central Commercial District"; an "M-zoned" district is an "Industrial District"; and an "R-zoned" district is a "Residential District."  *See* Buff. Code § 511-5.
[3]     Chapter 263 sets forth the specifications for obtaining construction and building permits.  *See generally* Buff. Code §§ 263 *et seq*.

> application based on his investigation of the planning and zoning
> issues relative to the location of the adult use within 45 days, or else
> such application shall be deemed approved.

Buff. Code § 511-95(A)(3). Under the Code, "[t]he duties of administering and enforcing the

[zoning regulations] shall be performed by the Commissioner of the Department of Permit and

Inspection Services . . . [who] shall have exclusive authority to grant building permits." Buff.

Code § 511-116(A).

26.    The Body Shop is located in an M2 district, and is not within 750 feet of any other

adult use, R-zoned districts, or any church, school, playground, child-care center, public park, or

community center. Therefore, it is permissibly located at the Premises in accordance with the

Adult Regulations.

27.    The Adult Regulations do not contain any objective criteria to guide the

Commissioner in determining whether to grant or deny an "adult use" permit.

**B.    Dance Regulations**

28.    Second, The Body Shop is subject to the regulations for Dances and Dance Halls

("Dance Regulations"). As set forth under the Dance Regulations:

> A. No person shall hold any public dance . . . in any public dance
> hall within the City until said public dance hall shall first have
> been licensed as provided in this chapter. . . .
>
> B. No person shall hold a public dance within the City without
> having first obtained a permit therefor from the Commissioner
> of Permit and Inspection Services, upon consent of the Common
> Council.
>
> C. Upon the consent of the Common Council, the Commissioner of
> Permit and Inspection Services may issue a license hereunder to
> any person owning or conducting a hotel or restaurant in the City
> to permit dancing therein subject to all of the provisions and
> conditions hereinafter contained unless specifically exempted
> hereinafter.

Buff. Code. § 150-2.  Such applications "shall be made by the owner or operator and shall be addressed to the Commissioner of Permit and Inspection Services and filed by him with the City Clerk to be transmitted to the Common Council of the City of Buffalo."  Buff. Code. § 150-3(C).

29.     Upon receipt of such an application, it is the duty of the Commissioner to:

> investigate . . . each such application to determine whether or not the dance hall, hotel or restaurant for which a license is sought complies with the regulations . . . and whether or not the person or persons making such application . . . are of *good moral character*. . . .  [T]he Commissioner shall have the assistance of the Departments of Police and Fire . . . [which] . . . shall furnish to the Commissioner . . . the information derived from such investigation, accompanied by a recommendation as to whether a license should be granted or refused.

Buff. Code. § 150-4 (emphasis added).  Notably, "[n]o license . . . shall be issued until it shall be found that such [business] complies with and conforms with all ordinances and regulations for the protection of the public health; . . . that it is a *proper place* for the purpose for which it is to be used; . . . and the owner . . . is a person of *good moral character*."  Buff. Code § 150-8(A) (emphasis added).  Moreover, the holder of such a license "shall not permit . . . any kind of exhibition, show or entertainment which may in any way be classified as obscene or *immoral*, which will tend to *corrupt the morals of any youth or other person*."  Buff. Code § 150-8(C) (emphasis added).

30.     The Dance Regulations do not provide any time limitations on the Defendants' acceptance or denial of the application.  The Dance Regulations do not provide any objective definitions for the terms "good moral character," "immoral," "proper place" or entertainment that "corrupt[s] the morals of any youth or other person."  More importantly, the Dance Regulations do not set forth any objective criteria to guide the Police Department's investigation and recommendation of whether to grant or deny such applications.

### C.    Restaurant Regulations

31.    Third, The Body Shop is subject to regulations for restaurants ("Restaurant Regulations").  Restaurants are unable to operate "without a license issued by the Commissioner of Permit and Inspection Services."  Buff. Code § 370-2.  "Before issuing any license . . . the Commissioner . . . shall also refer said application to the Precinct Captain and Commissioner of Police for their investigation regarding *citizen complaints*, *loud* music, *rowdy* patrons and/or criminal activities, with approval or disapproval of application returned to the Commissioner."  Buff. Code § 370-3(C) (emphasis added).

32.    The Restaurant Regulations do not contain any time limitations as to when the Commissioner must make a decision on an application.  The Restaurant Regulations do not contain any time limitations as to when the Police Department must complete its investigation of such applicant.  More importantly, the Restaurant Regulations do not provide any objective criteria to guide the Police Department and the Commissioner in assessing such applications, particularly with respect to interpretation of the terms "citizen complaints," "loud," and "rowdy."

### <u>GENERAL ALLEGATIONS</u>

33.    Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

34.    On June 1, 2011, PE1 entered into a Commercial Lease Agreement ("Lease") with Leasehold Enterprises, Inc. to rent the Premises as the location for The Body Shop.  (A true and correct copy of the Lease is attached hereto as **Exhibit A**.)

35.    On November 9, 2011, a general contractor permit was issued for renovations and improvements to be done at the Premises.  The permit approved a "change of use . . . in a portion

of the building from [a] postal sorting facility to an exotic cabaret adult use."  (A true and correct copy of the permit is attached hereto as **Exhibit B**.)

36.     Shortly thereafter, construction of the cabaret began.  Upon information and belief, at all times throughout the construction period, PE1 was in compliance with its building permit, and conducted all construction activity at a significant expense and with the City's approval.

37.     In 2012, PE1 applied to and paid the City for a Restaurant license, a Restaurant/Dance license, a GoGo Dancing license, and a Certificate of Inspection.  (A true and correct copy of the record documenting payment of the license fees is attached hereto as **Exhibit C**.)  PE1 was specifically instructed by the City to obtain both a Restaurant license and a Restaurant Dance license to operate its cabaret, along with the GoGo license and Certificate of Inspection.

38.     On October 14, 2014, two Use permits were issued to the Premises rendering approval for the: "Alter[ation of] the use as an exotic cabaret adult use.  See application #168560 for the plans and change of use.  Fees are being waived on this permit because they were all paid under applic[ation] #168560."  (True and correct copies of the Use permits are attached hereto as **Exhibit D**.)

39.     On February 23, 2015, a Conditional Certificate of Compliance ("Conditional Certificate") was issued for the Premises; however, the Conditional Certificate disclaimed that "Common Council Approval For City Licenses Must Be Obtained Prior to Operating."  (A true and correct copy of the Conditional Certificate is attached hereto as **Exhibit E**.)

40.     On February 25, 2015, a Fire permit was approved for The Body Shop to operate as a public assembly and a restaurant.  (A true and correct copy of the fire permit is attached hereto as **Exhibit F**.)

41.     Additionally, the Health Department for the County of Erie issued a permit to Plaintiffs to operate The Body Shop as a "Tavern and/or Limited Food Preparation."  (A true and correct copy of the Health Department's permit is attached hereto as **Exhibit G**.)

42.     Upon information and belief, the establishment does not need both a Restaurant license as well as a Restaurant/Dance license to operate as an exotic cabaret.  Nevertheless, as instructed by city officials, PE1 submitted a City of Buffalo-License Application ("City License Application") for The Body Shop to operate as a Restaurant, Restaurant Dance, and GoGo Dancing venue.

43.     Upon information and belief, as set forth in the Conditional Certificate of Compliance and the City License Application, to obtain approval to operate as a Restaurant Dance and GoGo Dancing venue, Plaintiffs must appear in front of the Buffalo Common Council ("Common Council").

44.     On the other hand, upon information and belief, a Restaurant license does not require Common Council review or approval prior to the issuance of an operational license, so long as it is approved by the fire department, police department, and has received plumbing and electrical approval.

45.     After submitting the initial City License Application, Grys visited City Hall multiple times to check on its status.  He was finally informed that the City had no record of the City License Application and that Plaintiffs must submit another application before they would be scheduled to appear before the Common Council.

46.     Therefore, on March 20, 2015, PE1 re-submitted its City License Application to City Hall ("March 20, 2015 Re-Submission").  (A true and correct copy of the March 20, 2015 Re-Submission is attached hereto as **Exhibit H**.)

47.     Remarkably, Plaintiffs later received a Notice of Violation letter ("Violation") dated March 12, 2015, eight days prior to the March 20, 2015 Re-submission.  (A true and correct copy of the Violation is attached hereto as **Exhibit I**.)

48.     The Violation explained that the Restaurant "license application has been disapproved by:  Buffalo Police Department."  The Violation stated that "[t]his gentlemen's club was formerly based in Fredonia, NY where it generated hundreds of police calls for service." Furthermore, the Violation "must be corrected prior to the disapproval call back date.  No license will be issued until all approvals for said license have been met."  The Violation directed Plaintiffs to contact Margaret Overdorf and was signed by Defendant Sole.

49.     In response to the BPD's unfounded allegations regarding the Fredonia club, Plaintiffs filed a Freedom of Information Law request with the Fredonia Police Department.  (A true and correct copy of the request is attached hereto as **Exhibit J**.)  Notably, the Fredonia Police Department's response underscores the frivolity of the BPD's claims.  The response lists *four incidents* (not the purported hundreds) over the multi-year period that the Fredonia, NY Club was in operation.  (A true and correct copy of a summary of the Fredonia Police Department's response, as well as all documentation included in the response, is attached hereto as **Exhibit K**.)

50.     Further, a copy of the rejected March 20, 2015 Re-submission on file with the City attached a letter of disapproval from a plumbing inspector alleging that Plaintiffs were unresponsive to calls.  (A true and correct copy of the inspector's letter of disapproval is attached hereto as **Exhibit L**.)  This disapproval was dated February 25, 2015, and yet, handwritten notes indicate that the disapproval was not determined until "6/1/15."  These dates, which are internally inconsistent, also clash with the dates provided in the Violation and the March 20, 2015 Re-submission.

51.     As a result, Plaintiff's counsel, Barry Nelson Covert ("Mr. Covert"), contacted Defendant Sole by telephone to discuss the denial. According to the numerous conversations between Mr. Covert and Defendant Sole, based on the BPD's failure to approve the license, Sole has withheld submitting the license applications to the City Common Council and the applications currently stand in a state of "limbo" as neither approved nor denied, with no opportunity for a decision. (True and correct copies of letters memorializing these conversations are attached hereto as **Exhibits M, N, O**.)

52.     Based on counsel's conversations with the City's various agencies and their officers, as summarized in **Exhibits M** and **N**, The Body Shop is located in the proper zoning district, but no further action will be taken on Plaintiffs' application because the BPD does not want any additional adult businesses within the City's boundaries.

53.     As such, the application remains in a condition of neglect unless, and until, the City decides to take some further action, which cannot be compelled under any circumstances due to the lack of clarity of proceedings set forth in the Code.

54.     To date, Plaintiffs have not received a response or hearing date to appear in front of the Common Council regarding its Restaurant/Dance and GoGo Dancing application.

55.     On June 22, 2015, upon information and belief, Officer Lee, the original police officer assigned to inspect the Premises with regard to the Restaurant license application, performed a walk-through of the Premises with Grys, pursuant to Grys's request, and despite the fact that he had no authority to withdraw the denial.

56.     Upon information and belief, Officer Lee told Grys that the only concerns he had during inspections of businesses of this type were whether the establishment represented a "real

business," that the business principals "are who they say they are," and that the establishment would be operating a "legitimate business."

57.     Upon information and belief, Officer Lee told Grys that if he was in charge of the Restaurant license approval, he would approve the license, and that he thought the Premises was a "nice establishment."

58.     However, according Officer Lee, for reasons unbeknownst to him, the Restaurant license application was removed from his desk and given to the Chief of Police before Officer Lee had the opportunity to perform a standard investigation.

59.     Upon information and belief, the ordinary procedure in response to a Restaurant license application is that the investigating officer (in this case, Officer Lee) conducts the initial investigation of the subject premises, making a recommendation to the Chief of Police as to whether to accept or reject the application.  The Chief of Police then makes a decision, based upon the investigating officer's recommendation, and sends the final assessment to Margaret Overdorf. Overdorf then sends the inspection report and recommendation on to the City.

60.     Upon information and belief, Defendant BPD never implemented the standard, requisite investigation at the Premises prior to denying the Restaurant application.

61.     Upon information and belief, after Defendants circumvented the standard procedure for review of license applications, the Violation was issued to Plaintiffs with the instruction to contact Margaret Overdorf.   Notably, the line that ordinarily provides the "Agency Phone Number" was left blank and, unsurprisingly, Grys experienced significant difficulty obtaining Overdorf's number.

62.     On June 24, 2015, Grys procured Overdorf's telephone number and immediately called her.  He was told that he should contact the Assistant City Attorney for any further questions regarding his pending applications.

63.     To date, Plaintiffs have not received any means of progressing with the licensing process, and have been rendered unable to operate, indefinitely.

64.     Moreover, Plaintiff's counsel has not heard from Sole, Beaty, or the City's Attorney regarding his requests to discuss, and amicably resolve, the instant action.

## CLAIMS

### COUNT 1:     DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES BECAUSE THE CODE OPERATES AS AN UNLAWFUL PRIOR RESTRAINT FACIALLY AND AS APPLIED

65.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

66.     The Body Shop will be engaging in protected expression in the form of nude, or partially nude, dancing.

67.     It is well-settled that "an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official— as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969) (plurality opinion) (quoting *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958)).

68.     Upon information and belief, the Defendants have accorded their officials the unbridled discretion to suppress Plaintiffs' protected expression in violation of the First Amendment of the United States and New York State ("State") Constitutions.

69.     In fact, the Adult, Dance, and Restaurant Regulations do not provide *any* criteria to guide City officials in the assessment of applications submitted thereunder.

70.     Further, upon information and belief, the City's licensing scheme fails to place *any* limits upon the timeframe within which Defendants, or their agents, must make a decision on Plaintiffs', or any other establishment's, applications to operate.

71.     Defendants have taken advantage of this lack of regulation by indefinitely barring Plaintiffs' operation of The Body Shop at the Premises.

72.     Upon information and belief, The Body Shop is located in an area specifically provided by the City as complying with all potential secondary effects and deleterious condition considerations, and is, therefore, permitted to locate as an "adult business" at the Premises.

73.     By reason of the foregoing, Plaintiffs are entitled to a judgment declaring that the City Code's licensing scheme is an unconstitutional prior restraint on protected expression which fails to serve a compelling or important government interest, facially or as-applied to Plaintiffs, in violation of the First and Fourteenth Amendments to the Constitution of the United States and the corresponding provisions of the State Constitution.

74.     Plaintiffs have presented this Court with a justiciable controversy.

COUNT 2:      DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES
BECAUSE THE CODE IS IMPERMISSIBLY VAGUE FACIALLY AND AS APPLIED

75.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

76.     The Dance and Restaurant Regulations in the Code are unconstitutionally vague.

77. Statutes which are vague, and which are not subject to reasonable interpretation by common men, inherently deny due process and are therefore unconstitutional. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

78. Upon information and belief, the Dance and Restaurant Regulations force applicants to guess at their meaning, and relegate enforcement decisions to the personal and subjective views of government officials.

79. In the Dance Regulations, the terms "good moral character," "proper place," "immoral," and "corrupt the morals" are not defined.

80. In the Restaurant Regulations, the terms "citizen complaints," "loud," and "rowdy," are also equally vague.

81. Therefore, Plaintiffs are entitled to a judgment declaring the Code's Restaurant and Dance Regulations are impermissibly vague, both facially and as-applied to Plaintiffs, in violation of the First and Fourteenth Amendments to the Constitution of the United States, as well as the corresponding provisions of the State Constitution.

82. Plaintiffs have presented this Court with a justiciable controversy.

<u>COUNT 3:   DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES BECAUSE THE CODE IS IMPERMISSIBLY OVERBROAD FACIALLY AND AS APPLIED</u>

83. Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

84. The Dance and Restaurant Regulations in the Code are unconstitutionally overbroad.

85.     The overbreadth doctrine prohibits a statute from making innocent or constitutionally protected conduct criminal in nature.  *See Broderick v. Oklahoma*, 413 U.S. 601, 613 (1971); *Coates v. City of Cincinnati*, 402 U.S. 611 (1971).

86.     The terms "good moral character," "proper place," "immoral," and "corrupt the morals," as found in the Dance Regulations, easily expands the boundaries of its enforcement to include theatrical performances, fitness centers, and even dance studios offering pole or belly dance lessons.

87.     Further, the terms "citizen complaints," "loud," and "rowdy," as found in the Restaurant Regulations, have been recognized by numerous courts as being overbroad. *See Norfolk 302, LLC v. Vassar*, 524 F. Supp. 2d 728, 737-38 (E.D. Va. 2007) (enjoining enforcement of liquor statute banning sale of liquor in establishments involving "lewd" and "disorderly conduct" as overbroad).

88.     Thus, Plaintiffs are entitled to a judgment declaring the Code's Restaurant and Dance Regulations impermissibly overbroad, both facially and as-applied to Plaintiffs, in violation of the First and Fourteenth Amendments to the Constitution of the United States, as well as the corresponding provisions of the State Constitution.

89.     Plaintiffs have presented this Court with a justiciable controversy.

### COUNT 4:     DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES BECAUSE DEFENDANTS DENIED PLAINTIFFS THEIR RIGHTS UNDER THE EQUAL PROTECTION CLAUSE

90.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

91.     Defendants' failure to issue the necessary licenses to operate The Body Shop violates Plaintiffs' rights under the Equal Protection Clause, which prohibits state actors from discriminating on the basis of the content of expression.

92.     The Fourteenth Amendment's Equal Protection Clause instructs that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

93.     Under the Fourteenth Amendment, a law that impermissibly interferes with the exercise of a fundamental right, such as freedom of expression, is subject to strict scrutiny.

94.     Defendants have refused to allow The Body Shop to operate in an M2 District, despite their compliance with all relevant Code provisions.

95.     Plaintiffs are similarly situated to all other "adult" businesses in the area, and other business applicants, which are presently permitted to operate.

96.     Upon information and belief, Defendants have circumvented the application process afforded all other "adult" businesses seeking to locate in the City, rendering Plaintiffs' application status "in limbo" and its establishment non-operational, indefinitely.

97.     Nevertheless, Plaintiffs were told that they must apply, and pay for, all of those licenses to operate an exotic cabaret at the Premises.

98.     Thereafter, the establishment's Restaurant license was disapproved by Defendant BPD on the basis that "[t]his gentlemen's club was formerly based in Fredonia, NY where is generated hundreds of police calls for service."

99.     Interestingly, a Freedom of Information Law request seeking all complaints made to Defendant BPD regarding Plaintiffs' previous establishment in Fredonia listed four (4)

incidents, as opposed to the purported hundreds, over the multi-year period that such club was in operation.

100.    Clearly, Defendant BPD's reasons for denial were not based in any sound or viable facts related to the Fredonia, NY establishment, as purported.

101.    Further, upon information and belief, Plaintiffs' applications were removed from the Defendant BPD officer placed in charge of performing the initial inspection, and given directly to the Chief of Police, who subsequently denied them before performing a standard inspection.

102.    Upon information and belief, the ordinary procedure in response to a Restaurant license application is that the investigating officer conducts the initial investigation of the subject premises, and then makes a recommendation to the Chief of Police as to whether to accept or reject the application.  The Chief of Police then makes a decision, based upon the investigating officer's recommendation, and sends the final assessment to Margaret Overdorf, who sends the inspection report and recommendation to the City.

103.    Thus, upon information and belief, Defendants have circumvented the standard procedure for review, and denied Plaintiffs' application based upon invalid information and in contravention of the procedures afforded all other businesses in the area.

104.    Further, Defendants' prevention of Plaintiffs' operation pursuant to a vague and unconstitutional technicality in the City Code evinces a clear intent to inhibit or punish the exercise of constitutional rights.

105.    By reason of the foregoing, Plaintiff is entitled to a judgment declaring the Defendants' unconstitutional circumvention of the City Code regulations and procedures to Plaintiffs' detriment as being a violation of the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution, as well as corresponding provisions of the State Constitution.

106.    Plaintiffs have presented this Court with a justiciable controversy.

COUNT 5:    DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES BECAUSE DEFENDANTS DENIED PLAINTIFFS THEIR PROCEDURAL DUE PROCESS RIGHTS

107.    Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

108.    Defendants have deprived Plaintiffs of a protected liberty interest, namely, the right to engage in protected expression.

109.    Further, Defendants have infringed upon Plaintiffs' exercise of this fundamental right without according Plaintiffs due process.

110.    As discussed in the previous section, upon information and belief, Defendants circumvented the standard procedures afforded all other businesses attempting to obtain operational licenses from the City.

111.    By doing so, Defendants have effectively placed Plaintiffs' applications in an indeterminate state, whereby Plaintiffs are prohibited from pursuing any further action unless, and until, Defendants decide to take further action.

112.    Further, upon information and belief, Defendants forced Plaintiffs to obtain multiple and redundant licenses to operate, garnering substantial fees for the City, and providing Defendants with multiple avenues through which they can deny Plaintiffs' ability to operate.

113.    Defendants have also failed to provide Plaintiffs with any manner of recourse, or any time frames within which they can expect a final and appealable decision through which they can address the incorrect and improper determinations herein.

114.    By reason of the foregoing, Plaintiffs are entitled to a judgment declaring that Defendants have deprived Plaintiffs of their right to operate their business, in violation of the due process afforded Plaintiffs pursuant to the Fourteenth Amendment to the United States Constitution, as well as the corresponding provision of the State Constitution.

115.    Plaintiffs have presented this Court with a justiciable controversy.

COUNT 6:          ATTORNEYS' FEES 42 U.S.C. § 1988

116.    Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

117.    Upon information and belief, while acting under color of state law, Defendants, by their officers, agents, and employees, have enacted and enforced portions of the City's Zoning Code in an arbitrary and irrational manner; as a prior restraint unlawfully barring operation of The Body Shop, while seeking to place unlawful restrictions on Plaintiffs' expressive activity protected by the First and Fourteenth Amendments; and depriving Plaintiffs of their due process rights protected by the Fourteenth Amendment, constituting a violation of Plaintiffs' civil rights in contravention of 42 U.S.C. § 1983.

118.    Plaintiffs are entitled to a judgment against Defendants awarding monetary damages in an amount to be determined at trial, by reason of the delays caused by Defendants in unlawfully preventing Plaintiffs from operating The Body Shop.

119.    Plaintiffs, as prevailing parties, are entitled to an award of costs and attorneys' fees incurred herein under 42 U.S.C. § 1988.

120.    Plaintiffs have presented this Court with a justiciable controversy.

## JURY DEMAND

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Honorable Court to grant relief to Plaintiffs and against Defendants as follows:

A.     Finding and declaring that the City's Zoning Code enables impermissible prior restraint on First Amendment activity;

B.     Finding and declaring that the Adult, Dance, and Restaurant Regulations are unconstitutional on their face and as applied to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution and the corollary protections of the New York Constitution;

C.     Enjoining Defendants and their employees, agents, employees, as well as all persons acting for or on their behalf, from enforcing the Adult, Dance, and Restaurant Regulations against Plaintiffs or their interests;

D.     Awarding Plaintiffs monetary damages against Defendants for, *inter alia*, lost profits, loss of good will, remodeling costs, maintenance costs, and deprivation of constitutional rights;

E.     Awarding Plaintiffs their attorney fees and costs; and

F.     Awarding such further and additional relief that the Court deems just and proper.

Dated: October 9, 2015                Respectfully Submitted,

s/Barry N. Covert
BARRY NELSON COVERT, ESQ.
ERIN E. MCCAMPBELL, ESQ.
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Plaintiffs,
JAMES A. GRYS, JR.,
PE1 ENTERPRISES, INC. d/b/a THE BODY
SHOP, and/or BODY SHOP GENTLEMAN'S
CLUB
Office and Post Office Address
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3901
Phone: (716) 849-1333
Fax: (716) 855-1580
E-mail: bcovert@lglaw.com
          emccampbell@lglaw.com